Our fifth case for this morning is United States v. Rashid Minhas. Ms. Pikus? Yes, Your Honor.  Good morning, Your Honors. I'm Krista Pikus on behalf of Rashid Minhas. We are here today because the district court misapplied the substantial financial hardship enhancement to both of Mr. Minhas' sentences, which were consolidated for sentencing and appeal. This misapplication almost doubled his sentence. First, I will address the standard of review. Well, before we get there, I want to stop on whether it actually had any effect on his sentence. The district judge says a couple of things. He first makes a rather confusing set of remarks, but then as he moves on after he's considered the 3553A factors, he says, This is a serious crime, and as I said, taking into account everything and even putting aside the technical calculation of the guidelines range, I don't think anything less than nine and a half years would be sufficient to fulfill the purposes of 3553A. And he says some other things. So I'm wondering what effect his decisions about how to interpret substantial hardship really had on this case. It had a significant effect, Your Honor. In fact, in the city travel case, it increased Mr. Minhas' sentence by 16 to 21 months. That's his advisory guideline range, but Judge Feinerman says he doesn't think anything less than nine and a half years, which is what he gives him, 114 months, would be sufficient. So why shouldn't we read that as saying, hey, the floor was nine and a half years, and that's what I gave him, regardless of whether the hardship additions advised one guideline range or another? Yes, Your Honor, because if we do the calculations, if the district court judge would have properly applied the substantial financial hardship enhancement, it would have effectively decreased Mr. Minhas' sentence by approximately four years. So that enhancement did play a substantial role. Well, the advisory sentence, and that's what I'm saying. The judges are entitled to go above the advisory. There's no question about bumping into a statutory maximum or anything like that in this case. So they can go above, and he makes this statement. I completely understand. You're not raising a bad argument at all. This is something that did affect the advisory range, but then the next question is, if the judge doesn't want to take the advice and the judge decides to go higher, where are we? Now, he also has this other somewhat bollocked-up statement that might make you think it's not clear that he would have sentenced to 115 months one way or the other. And I will say, in terms of your standard of review, I think, as we often do, we have two issues. One, what does the phrase substantial financial hardship mean? How does it get interpreted? I would think that's de novo. How is it applied? Deferential, if we agree with the way the district judge did. He understands it to be a subjective standard. Yes, Your Honor. I will first address the first part of your question. So if the judge did want to go beyond the guideline range and pass the statutory maximum, in some cases that is appropriate, but in this case it certainly was not. Well, it's inside the statute. He can't go beyond the statutory maximum, but he's nowhere close to it in this case. But if the judge did that, then it needs to still be supported by sufficient findings, which goes to the second part of your question regarding the standard of review. Of course, factual determinations are reviewed for clear error, but the primary issue in this appeal is whether the district court properly applied the substantial financial hardship to the facts of today's case. And the district court did not for two primary reasons. The first reason is that the government failed to bring forth enough evidence to apply this enhancement. And the second reason is because with this lack of evidence, the district court then extrapolated the victim's hardship to other individuals by aggregating the victims into a single group to infer hardship. Well, what he does, I see what you're saying, but he does two things that I'm not sure that your argument fully takes into account. One, he listens to some people testify and looks at some submissions, and he comes to the conclusion that this is, in general, a group of people of, you know, they're immigrants, they're largely Pakistanis and others. They are of modest financial circumstances, particularly in the second, the Light Star case, you know, there's a religious overtone, it's a hajj. So he takes that into account, and he looks at the list. He's not just pulling out of the air. He has kind of a financial cutoff that below a certain amount, he's not assuming substantial financial hardship, but above what he calls the mid-four figures in the one case and closer to five figures in the Light Star case. He's going to say, for these people, that's substantial. Wouldn't be substantial, presumably, for Warren Buffett, but, you know, it is for these folks. Yes, Your Honor, that exact type of extrapolation is inappropriate here. First, because the nature of this enhancement by itself is an individualized inquiry. The purpose of this enhancement was to focus on the extent of harm that particular victims suffered and not to lessen the focus of the cumulative impact of the amount of loss and the number of victims. Furthermore, Your Honor? So you think nothing less than individual testimony, say, for the 25 or more, you're going to have to call in the 25 people. That's correct, Your Honor. The government needs to meet its burden and call forth the victims that they allege to have established substantial financial hardship in order for them to meet their burden, and they did not do so. Specifically in the Light Star Hodge case, there was only specific information for 12 victims, yet the district court found that over 25 victims suffered substantial financial hardship. But he does have the chart listing the victims, and he knows how many people lost how much money. He knows that these were all the Hodge trips, so there's a religious significance to that. Yes, Your Honor. First, with regards to the amount of loss, that was already taken into consideration in sentencing Mr. Minhas because the cumulative amount of loss was between $500,000 but less than $1.5 million. Right, but the per victim loss, he's not looking at every victim. He's looking at those, sort of the high four figures, five figures loss. So he's not saying all 82 victims suffered substantial hardship. It's only some of them. Right, but that type of extrapolation is inappropriate here because, again, this enhancement requires a individualized and specific inquiry. And furthermore, even if extrapolation was appropriate here, the district court's basis for extrapolating was insufficient. Specifically, on page 40 through 41 of the sentencing transcript, the district court explains its reasoning for this extrapolation, which was that these victims were looking for discounted tickets and that they were looking for discounted tickets in the Pakistani American newspaper. However, this is an inappropriate extrapolation because it necessarily infers that someone who wants a discounted ticket, then if that person lost an amount in the mid four figures, that would necessarily be substantial financial hardship. And it also makes the impermissible connection that if you are the type of demographic that would read the Pakistani American newspaper, then if you lost amount in the mid four figures, well, then you would necessarily suffer substantial financial hardship. Those type of extrapolations are inappropriate, Your Honor. And I see that I'm going into my rebuttal time, so I'd like to remain what time I have left to rebuttal. That would be fine. Ms. Bonamici. May it please the Court. Good morning. Deborah Bonamici on behalf of the United States. The district court committed no error in determining the sentence in this case. It properly imposed the challenged enhancement based on reliable information, reasonable inferences drawn therefrom, as well as a correct interpretation of the guideline. But why should we assume that, you know, say $5,000 or $7,000 for Pakistanis, which runs troublingly close to making ethnic assumptions about people that the guidelines have actually never sanctioned, why should we assume that just because it's that way for one person who testifies, it's that way for others? I think that is a complete misreading of the transcript and the judge's comments, Your Honor. I think what the judge was saying there was that he was basically echoing what a couple of the witnesses said, which was that the victims here, many of the victims, most of the victims were all from the same neighborhood. They knew each other. They were people who recognized one another, and in the case of the person who sometimes served as an imam and was designated the imam for one of these Hajj trips, they knew each other well. And because of this, the court was saying it's appropriate to extrapolate from not only the statements or the testimony and the letters sent by individual victims, but also the statements made by victims who talked about other victims. These were people, they had a basis of knowledge here. I think it's really unfair to suggest that the court was talking there about extrapolating on that basis alone. The court made crystal clear in other parts of the transcript that that's not at all what the court was doing. What the court was doing was saying we've heard from witness after witness who basically presented the same type of financial situation. And then we heard from witnesses who spoke about other witnesses and other victims and described the victims as being people, regular working people, normal people, people who live in the neighborhood, people who don't have, you know, who aren't, as Your Honor put it, Warren Buffett. And so taking all of that into consideration, I think what the court is talking about is that these, for the most part, these victims were all of the same circumstances. At least most of them were. And that was sufficient to make the kind of determination that he was making in one case looking at the number five and another case looking at the number 25. So let me ask you another question that troubles me about this. This is a relatively new part of the guidelines, and we need to understand what the guideline means when it talks about substantial hardship. And so we have this application note which gives some examples. They're not exclusive examples, but it gives some examples of what this means. And all of the examples, I'll put three to one side for just a moment because that's the one the judge looks at, but the other ones, one, two, four, and five, all strike me as really drastic. Becoming insolvent, filing for bankruptcy, making substantial changes to employment such as postponing retirement plans, relocating to a less expensive house, substantial harm to credit. Those are all very significant problems. And then we have suffering substantial loss of a retirement, education, or other savings or investment fund. The district court seems to have equated that to simply a statement of losing a lot of money, understanding a lot to be one's subjective notion of how much money counts as a lot. And I wonder whether that's consistent with the theme of these other factors which all seem to be a rather permanent impact on somebody's financial welfare. I don't think it's quite right that the judge interpreted the general concept of hardship as just losing a lot of money. I think what the judge did was two things. One, the judge focused on the amount of loss relative to the general economic circumstances of the defendants. That's the primary thing that he stressed. And I think that that is absolutely consistent with the language of the guideline. And it's also consistent with the provision number three, which says suffering substantial loss of a retirement, education, or other savings or investment fund. A recurring theme among the victims in this case was that they had set aside money, that they had worked and strived over a period of years, in one case eight years, to save enough money to make this very expensive trip. They did it for religious reasons in the second fraud. And in the other, in the case of the first fraud, they did it for either religious or generally family reasons. These were not cruise vacations. And even if they were, I'm not sure that that would necessarily be that significant. But they were not. And these were people who had to work and save over a long period of time in order to gather up the funds to do that. That is a substantial loss of a savings. Several of the victims testified they didn't think they would ever be able to accomplish this again. And it was important to them. Was this a cumulative thing as well? This is what I wonder when I look at this, whatever is supposed to be a substantial financial hardship. There were, how many people were all involved? Hundreds, right? Yes. In the case of the first one, there were more than 172 people who lost more than $1,000. In the Light Star Hodge case, there were 45 people who lost more than $5,000, 30 people who lost more than $7,000, and 18 people who lost more than $10,000. So I'm just looking at the cumulative portion of this as opposed to each individual. Because as Judge Woodard earlier asked, you have to come up with 25 people. And, of course, it's subjective. So each person is going to have a different level, I guess, of substantial financial hardship, a person that's barely making it. We all know those people who live hand-to-mouth. And there's no extra money coming in. So to save for this kind of a trip to go over there for religious or perhaps family reasons could be a hardship for that person, whereas others may find that's not a really hard thing to do, but they do want to go for the pilgrimage and get that out of the way. So I guess that I looked at this when I saw the substantial financial hardship, since it's not earlier defined in specific detail, that it could be because of the whole group. And this whole group testified reference to, I guess, is it a church group or is it a neighborhood group? No, it was individual victims. They were basically, I mean, not in the same neighborhood. I know it's individual victims, but, I mean, they obviously have a common identification. That's correct. And everybody knows everybody for whatever it is. It's either a church group or maybe a neighborhood. Right. I don't know that I would, maybe not that. It's not that everyone knew everyone, but they were common. They're going to Pakistan. Correct. And so you don't go there. I mean, the cab driver I came over here with was from Pakistan. Right, and the cab driver who testified that he had to work 15 to 16 days, full days of work to make it up. I mean, there's a suggestion in the reply brief that that's not a lot. That's a half-a-month salary. That's a lot for somebody who is a cab driver and living closer to the bottom of this pile. I mean, these were discretionary funds. We are not talking about necessarily people who are living completely hand-to-mouth. But that's why I think the guideline is flexible enough to cover, you know, any number of circumstances. It might be bankruptcy if, well, I'm not going to speak about that. It might be bankruptcy or something like losing your home to one set of victims or one victim. And in the case of these victims, it was a substantial amount that they had set aside for something that was important to them. It was a savings, and it definitely fell within this category. And the court was not looking at things as a group. The court was looking at, was making inferences about individuals based on the individuals that he had heard from or, you know, seen submissions from. And as far as, you know, the details, the defendant at one point has made the claim that the defense was not permitted an opportunity to cross-examine these witnesses. That's not accurate. The defendant never made any request to cross-examine the witnesses that were presented or to call any of the additional witnesses. Of course, the government bore the burden of presenting the evidence. But it is unlikely that the guideline would be written in such a way as to require 25 separate witnesses to come into court and testify in order for that guideline to be applied. That really is not a sensible interpretation of the guideline. The interpretation reached by the district court in this case was a sensible interpretation, an appropriate one here. And we would ask that this court ... I have just one question, just one. And that is, could these be labeled as discretionary funds? In other words, this is for a special occasion, it's discretionary. It wasn't taking, I don't want to say, food out of their mouth or kicking them out of a house or something. It didn't go to those other extremes. So this is an exceptional thing. Obviously, it meant a whole lot to those people, for religious or family. But I don't want to mislabel it because we're sort of looking at this anew. It was about substantial financial hardship. It wouldn't be mislabeled if these were discretionary funds, even though they had saved up for them for a long time for an exceptional situation. All I meant to say, Your Honor, in response to your question, was that we're not suggesting that these people were going to starve as a result of their victimization in this case. That was the only point that I was making. The guideline nowhere, even though there are a number of pretty serious financial problems listed in the examples, the non-exhaustive list of examples provided by the guideline, the guideline nowhere suggests that a defendant has to be rendered destitute, or a victim needs to be rendered destitute in order to qualify the defendant for enhancement here. That would be an unfair and unreasonable interpretation of this guideline in the government's view. Thank you. All right. Thank you very much. Anything further, Ms. Pikus? Yes, Your Honor. Your Honor, multiple times the government noted that the victims were all in the same neighborhood as a basis for this extrapolation. That is an inappropriate extrapolation. A court cannot judge where a person is from to extrapolate what their financial conditions would be like. Furthermore, Your Honor, the government confuses what is a material loss between what is a substantial financial hardship. As you noted, the application notes, the factors that are included, are quite harsh. They include filing for bankruptcy, becoming insolvent, or relocating to a less expensive home. A generalized conclusion that someone lost an amount in the mid-four figures does not even rise to the level of the other factors. Furthermore, Your Honor, the guideline for substantial financial hardship is not meant to be cumulative. It's a relative and individualized inquiry that requires examining a person's personal circumstances. And the court did not do that in this case. So we ask that you vacate the sentence. Thank you, Your Honor. All right. Thank you very much. And we appreciate your help on the case, as does your client, I'm sure, thanks to the government. We'll take the case under advisement.